UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONSTRUCTIVE EATING, INC.,

                    Plaintiff,

v.                                                          Civil Action No. 2:19-cv-10619

MASONTOPS, INC.,                                    Honorable Sean F. Cox

                    Defendant.

_____

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS ALL
CLAIMS OF PLAINTIFF'S FIRST AMENDED COMPLAINT (ECF NOS. 23, 26, 27)**

This is an intellectual property case in which Plaintiff Constructive Eating, Inc.

("Constructive Eating") alleges that Defendant Masontops, Inc. ("Masontops") violates its

intellectual property rights on its designs for construction vehicle-themed eating utensils.

This case is before the Court on Masontops' motion under Rule 12(b)(6) to dismiss all of

Constructive Eating's claims (the "Motion"). The parties have submitted written briefs explaining

their positions on whether the Court should dismiss Constructive Eating's claims. ECF Nos. 23

(Def.'s Mot. Br.), 26 (Pls.' Resp. Br.), 27 (Def.'s Reply Br.).  Pursuant to E.D. Mich. LR 7.1(f)(2),

the Court will decide the Motion without a hearing.  For the reasons set forth below, the Court will

deny the Motion.

**I. PROCEDURAL HISTORY**

Constructive Eating filed this case on March 1, 2019. Compl., ECF No. 1. Constructive

Eating later filed an amended complaint on April 12, 2019 (the "Complaint"). Am. Compl., ECF

No. 4. In the Complaint, Constructive Eating alleges that Masontops violates its intellectual

property rights on its designs for construction vehicle-themed eating utensils under both federal

and state law. Under federal law, Constructive Eating asserts claims of trade dress infringement

and unfair competition under the Lanham Act, design patent infringement under the Patent Act, and copyright infringement under the Copyright Act. *Id.* ¶¶ 44-87, ECF No. 4. at PageID.62-71. Under state law, Constructive Eating asserts claims of common law unfair competition and violation of the Michigan Consumer Protection Act ("MCPA"). *Id.* ¶¶ 88-105, ECF No. 4. at PageID.71-74.

On June 29, 2020, in lieu of answering the Complaint, Masontops filed the instant Motion. ECF No. 23. In the Motion, Masontops asks the Court to dismiss all of Constructive Eating's claims under Rule 12(b)(6). Masontops argues that the Court should grant the Motion because Constructive Eating's claims are not plead with sufficient particularity, seek to protect unprotectable subject matter, and are facially implausible.

## II. PLEADING STANDARDS

Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to make such a showing may be dismissed pursuant to Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

When deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all the factual allegations contained in the complaint as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). In order to survive a Rule 12(b)(6) motion, a complaint need contain only "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are

merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. FACTUAL BACKGROUND

The facts of this case are largely undisputed.

#### A. Constructive Eating's Factual Allegations

For purposes of this Opinion and Order, the Court accepts as true the following factual allegations set forth by Constructive Eating in the Complaint. *Lambert*, 517 F.3d at 439.

Constructive Eating was founded in 2006 by two parents who, motivated to make mealtime more enjoyable for their children, created designs for construction vehicle-themed eating utensils. Am. Compl. ¶¶ 6-7, ECF No. 4 at PageID.53. Constructive Eating introduced its eating utensils into the marketplace in 2007. *Id.* ¶ 18, ECF No. 4 at PageID.56. In the years that followed, after investing substantial time and resources developing, manufacturing, marketing, promoting and building a distribution network for its eating utensils, Constructive Eating achieved significant commercial success, including generating millions of dollars in sales on nearly a million eating utensils. *Id.* ¶¶ 10, 17-20, ECF No. 4 at PageID.54-56. In addition, Constructive Eating achieved numerous awards, national recognition, national publicity, favorable customer reviews, and large social media followings. *Id.* ¶¶ 21-25, ECF No. 4 at PageID.56-57.

This case arose in 2018 when Constructive Eating learned that Masontops had introduced construction vehicle-themed eating utensils into the marketplace with similar designs. *Id.* ¶¶ 28, 33, ECF No. 4 at PageID.59, 61. Masontops marketed its eating utensils to Constructive Eating's customers, and began to compete with Constructive Eating for sales. *Id.* ¶¶ 28-29, 32, ECF No. 4

at PageID.59-60. Constructive Eating sent Masontops a letter demanding that it "cease and desist," but Masontops declined. *Id.* ¶ 33, ECF No. 4 at PageID.61.

As shown in Constructive Eating's images of the parties' eating utensils, reproduced below, the designs at issue in this case involve the combination of construction vehicles with the handles and food-manipulating portions of eating utensils. *Id.* ¶¶ 7, 28, ECF No. 4 at PageID.53, 59. Constructive Eating's three-piece set of eating utensils is shown at left, and Masontops' two-piece set of eating utensils is shown at right.



Among other similarities between the parties' designs, the construction vehicles are "integrated" with both the handles and the food-manipulating portions. *Id.* ¶ 8, ECF No. 4 at PageID.53-54. This integration includes the way the construction vehicles "morph" into the food-manipulating portions. *Id.* For instance, as seen in Constructive Eating's eating utensils, in the "front loader utensil" at left, the front loader's bucket morphs into a spoon, in the "bulldozer utensil" at top right, the bulldozer's blade morphs into a pusher, and in the "forklift utensil" at bottom right, the forklift's tines morphs into a fork. Similarly, as seen in Masontops' eating utensils, in the "front loader utensil" at left, the front loader's bucket morphs into a spoon, and in the "bulldozer utensil" at right, the bulldozer's blade morphs into a fork. Additional similarities between the parties' designs include the use of two-tone color schemes, and the use of two different materials. *Id.* ¶ 9, ECF No. 4 at PageID.54.

To further illustrate the similarities between the parties' designs, Constructive Eating contrasts them with the designs of a third-party competitor. As shown in Constructive Eating's images of the competitor's construction vehicle-themed eating utensils, reproduced below, the competitor's designs, like the parties' designs, involve the combination of construction vehicles with the handles and food-manipulating portions of eating utensils. *Id.* ¶ 30, ECF No. 4 at PageID.59-60. However, the competitor's eating utensils "look nothing like" the parties' eating utensils. *Id.*



Constructive Eating alleges that the similarities between the parties' designs has caused confusion as to the source of Masontops' eating utensils. *Id.* ¶ 43, ECF No. 4 at PageID.62. For example, Constructive Eating cites its interactions with prospective buyers at a trade show where both parties displayed their eating utensils. *Id.* ¶¶ 34-37, 41, ECF No. 4 at PageID.61-62. At the trade show, individuals approached Constructive Eating at its booth and, in reference to Masontops' booth, asked if Constructive Eating had another booth. *Id.* ¶ 39, ECF No. 4 at PageID.62. Moreover, individuals informed Constructive Eating that Masontops' eating utensils look "just like" or "exactly like" its eating utensils, and that Masontops was "ripping off," "knocking off" or "copying" its designs. *Id.* ¶ 40, ECF No. 4 at PageID.62. As another example of confusion, Constructive Eating cites a communication it received from a store owner who, after receiving Masontops'

eating utensils from a distributor, initially thought that they originated from Constructive Eating. *Id.* ¶ 42, ECF No. 4 at PageID.62.

### B. Constructive Eating's Intellectual Property Rights

Constructive Eating has both design patents and copyrights on its designs. In particular, Constructive Eating owns the "D'440 Patent" and the "'404 Copyright," which cover its design for the front loader utensil, and the "D'441 Patent" and the "'223 Copyright," which cover its design for the bulldozer utensil. *Id.* ¶¶ 11-16, ECF No. 4 at PageID.54-55; Ex. A, ECF No. 4-1 (Spoon With Integrated Construction Machine, U.S. Patent No. D554,440 (issued Nov. 6, 2007)); Ex. B, ECF No. 4-2 (Pusher With Integrated Construction Machine, U.S. Patent No. D554,441 (issued Nov. 6, 2007)); Ex. C, ECF No. 4-3 (BULL DOZER PUSHER, U.S. Copyright Registration No. VA 1-704-223 (registered July 6, 2009)); Ex. D, ECF No. 4-4 (FRONT LOADER SPOON, U.S. Copyright Registration No. VA 1-704-404 (registered July 6, 2009)).

Constructive Eating also alleges that it has "product design" trade dress rights on its designs — i.e., trade dress rights in the "overall look and appearance" of its construction vehicle-themed eating utensils. *Id.* ¶ 27, ECF No. 4 at PageID.58-59. In particular, Constructive Eating alleges that by virtue of its long-running position as the sole source of eating utensils embodying its "distinctive" designs, it has created "significant source-identifying and valuable goodwill." *Id.* ¶ 26, ECF No. 4 at PageID.58.

Constructive Eating's trade dress "articulation" — i.e., the elements of the alleged trade dress — is reproduced below, with reformatting by the Court to list each element in its own paragraph, group the elements by type, and label the elements in brackets for later reference:

> 27.    . . . Constructive Eating has protectable product design trade dress rights in the overall look and appearance of its Construction Utensils, including but not limited to the overall combination of the non-functional design aspects such [as]

[1. Eating Utensils]

[1a] design, style, appearance, visual connection and visual flow of the handle portion to the construction vehicle portion to the food manipulating portion;

[1b] the design, appearance, placement and location of the construction-themed vehicle on the utensil;

[1c] the shape, angle and extension of the handle out of the back end of the construction vehicle;

[1d] the integration of the construction vehicle with the food manipulating portion without interfering with the design of the construction vehicle;

[1e] the overall shape, proportions, widths, heights, size and dimensions of the utensils;

[1f] the use of two different materials to create a look of different textures on different portions of the utensil;

[1g] . . . a taper from the proximal end of the handle to the integrated construction vehicle[;]

[1h] the two-tone color scheme which can include a yellow or other color base and black accents and features;

[1i] the yellow or other color handle with black overlay;

[2. Construction Vehicles]

[2a] the distinctive projection for the exhaust pipe in the rear portion of the construction vehicle;

[2b] the shape, relative dimensions and color of the front and side windows in the cab;

[2c] the general shape and configuration of the Front Loader Utensil construction vehicle with heightened cab and trapezoidal profile;

[2d] the black wheels with yellow or other color circular centers on the Front Loader Utensil;

[2e] formed steps in the sides of the construction vehicle leading up to the cab;

[2f] general shape and configuration of the Bulldozer Utensil construction vehicle, including a higher tread back portion that converges to a lower front tread portion; [and]

[2g] the black bulldozer treads framing an oblong yellow or other color rounded trapezoidal shaped interior on the Bulldozer Utensil[.]

*Id.* ¶ 27, ECF No. 4 at PageID.58-59; *see also id.* ¶ 77, ECF No. 4 at PageID.69-70.

**C. Additional Facts**

In a point Masontops emphasizes throughout the Motion, Constructive Eating's claims raise issues concerning the protectability of its designs. In particular, whatever intellectual property rights might be recognized on its designs, Constructive Eating cannot appropriate the likes of

concepts and ideas for construction vehicle-themed eating utensils, and functional, standard, essential, and unoriginal elements and features in the field of construction vehicle-themed eating utensils, from the public domain. To inform its consideration these issues, the Court notes:

First, the concept of construction vehicle-themed eating utensils was known long before Constructive Eating created its designs. Masontops points out that in the 1970s, an earlier inventor, Pearson, obtained a utility patent coving the concept of construction vehicle-themed eating utensils. *See* Def.'s Mot. Br. Ex. A, ECF No. 23-2 (Combined Spoon & Toy, U.S. Patent No. 3,968,591 (issued July 13, 1976)) ("Pearson"). Similar to Constructive Eating's motivation for creating its designs, Pearson teaches that then-known spoons did not attract children's attention or incentivize children to enjoy eating. Pearson, abstract, 1:6-16, ECF No. 23-2 at PageID.167, 170. Pearson claims a "combined spoon and toy" in which a "portion simulating a truck" is "integrally" interposed between a "handle portion" and a "ladle like portion." *Id.* 2:41-50 (claim 1), ECF No. 23-2 at PageID.170. For example, as shown in figures 1 and 9, reproduced below, among other embodiments, Pearson covers a combined spoon and truck, in which a truck (4) is integrally interposed between a handle (2) and a ladle (3), and a combined spoon and bulldozer, in which a bulldozer (16) is integrally interposed between a handle (2) and a scoop (17). *Id.* figs.1 & 9, ECF No. 23-2 at PageID.168-169. Pearson teaches that although the embodiments include the ladle (3), the scoop (17) and the like, "it will be readily apparent that a fork may be used instead." *Id.* 2:26-28, ECF No. 23-2 at PageID.170.



Correspondingly, when Constructive Eating, through its founders, applied for a utility patent on its designs, it was denied concept-level protection on construction vehicle-themed eating

utensils in light of Pearson. *See* Eating Utensil With Integrated Construction Machine, U.S. Pat. Application Publication No. 2009/0077812 (published Mar. 26, 2009) (corresponding to U.S. Pat. Application Serial No. 11/903,214 (filed Sept. 21, 2007)). In the application, Constructive Eating maintained that then-known prior art did not "integrate the machines in a manner in which the functional aspects of the eating utensils are synonymous with the functional aspects of the machines." *Id.* ¶ [0009]. On this premise, Constructive Eating presented an independent claim broadly directed to this integration, and dependent claims more particularly directed to a machine's bucket acting as a spoon, a machine's blade acting as a pusher, and a machine's tines acting as a fork. *See id.* claims 1-4. The Examiner, however, citing Pearson, rejected all of the claims. *See* USPTO Public Patent Application Information Retrieval, https://portal.uspto.gov/pair/PublicPair (search for "Application Number" 11/903,214 and select "Image File Wrapper" tab) (rejecting claims 1-3 under 35 U.S.C. § 102(b) as being "anticipated" by Pearson, and rejecting claim 4 under 35 U.S.C. § 103(a) as being "obvious" over Pearson). Constructive Eating did not respond the Examiner's rejections, and its application lapsed into abandonment. *Id.*

Second, with respect to the construction vehicles in Constructive Eating's eating utensils, it is apparent that when Constructive Eating created its designs, it included generally true-to-life renditions of actual construction vehicles. For example, as shown in Masontops' images of a front loader and a bulldozer, reproduced below, the front loader and bulldozer in Constructive Eating's front loader and bulldozer utensils are recognizable as such by their overall configurations and color schemes. *See* Def.'s Mot. Br. 13, ECF No. 23 at PageID.153 (citing DOZERS, https://www.cat.com/en_US/products/new/equipment/dozers.html, and 14 Most Popular Types Of Construction Vehicles, https://www.fueloyal.com/14-popular-types-construction-vehicles/).



## IV. ANALYSIS

For the reasons set forth below, having found that Constructive Eating has satisfied the relevant pleading requirements and plausibly alleged the elements of its claims, the Court will deny the Motion.

### A. Trade Dress Infringement and Unfair Competition under the Lanham Act

Constructive Eating asserts a claim of trade dress infringement and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), alleging that Masontops infringes the alleged trade dress by using it on Masontops' eating utensils and unfairly competes with Constructive Eating by misappropriating the alleged trade dress. Am. Compl. ¶¶ 74-87 (Count IV), ECF No. 4. at PageID.68-71.

For the reasons set forth below, the Court will deny the Motion as to Constructive Eating's claim of trade dress infringement and unfair competition under the Lanham Act.

### 1. Legal Standards

Section 43(a) provides that:

> (a) (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which —

10

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

*          *          *

> (3) In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.

15 U.S.C. § 1125(a).

Concluding that it qualifies as a "symbol" or "device," the Supreme Court recognizes that Section 43(a) "embrace[s] . . . 'trade dress' — a category that originally included only the packaging, or 'dressing,' of a product, but . . . has been expanded . . . to encompass the design of a product." *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000). As explained by the Sixth Circuit, trade dress "refers to the image and overall appearance of a product. It embodies that arrangement of identifying characteristics or decorations connected with a product, whether by packaging or otherwise, that makes the source of the product distinguishable from another and promotes its sale." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002) (quotation, alteration and citation omitted) (hereinafter "*Am. Eagle*"). "Trade dress 'involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques.'" *Id.* at 629-30 (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764 n.1 (1992)).

Constructive Eating's alleged trade dress is (a) unregistered and (b) "product design" trade dress. For unregistered product design trade dress, the Supreme Court holds that a claim for trade dress infringement has three elements: (1) that pursuant to Section 43(a)(3), the alleged trade dress

is not functional; (2) that the alleged trade dress has acquired distinctiveness through secondary meaning; and (3) that pursuant to Section 43(a)(1)(A), the use of the alleged trade dress is likely to cause confusion as to the source of the accused product. *Wal-Mart*, 529 U.S. at 210 (noting the statutory non-functionality and likelihood of confusion requirements); *ibid* ("Distinctiveness is . . . an explicit prerequisite for registration of trade dress under § 2, and 'the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a).'") (citing 15 U.S.C. § 1052 and quoting *Two Pesos*, 505 U.S. at 768); *id.* at 216 (holding that a product's design can never be inherently distinctive and therefore "is distinctive, and therefore protectible, only upon a showing of secondary meaning").

In addition to satisfying the non-functionality, distinctiveness and likelihood of confusion requirements, the Sixth Circuit imposes a duty to articulate the elements of the alleged trade dress. In particular, despite describing trade dress in terms of "overall appearance" and "total image," the Sixth Circuit holds that "[w]hatever may be claimed as the combination of elements making up the product or its packaging and presentation, it will not do to solely identify in litigation a combination as 'the trade dress.' Rather, the discrete elements which make up that combination should be separated out and identified in a list." *Am. Eagle*, 280 F.3d at 634 (quoting MᴄCᴀʀᴛʜʏ Oɴ Tʀᴀᴅᴇᴍᴀʀᴋs § 8:3) (alteration omitted). *See also Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 746 (E.D. Mich. 2014) (Lawson, J.) ("A plaintiff must offer a precise expression of the character and scope of the claimed trade dress and articulate the elements of their product design with specificity to be afforded trade dress protection.") (quotation, alteration and citation omitted).

Non-functionality and distinctiveness are "ordinary legal trademark requirements" — i.e., a functional product feature cannot serve as a trademark, and a trademark must indicate the source of goods. *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159 (1995). Although the Supreme Court's *Qualitex* opinion concerned whether a color could be registered as a trademark, its discussion of non-functionality and distinctiveness informed its later application of these requirements to product design trade dress.

With respect to non-functionality, the Supreme Court in *Qualitex* explained that: "The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Id.* at 164. "'[I]n general terms, a product feature is functional,' and cannot serve as a trademark, 'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.'" *Id.* at 165 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n.10 (1982)). "The functionality doctrine thus protects competitors against a disadvantage (unrelated to recognition or reputation) that trademark protection might otherwise impose, namely, their inability reasonably to replicate important non-reputation-related product features." *Id.* at 169.

The Supreme Court's subsequent *TrafFix* opinion involved the application of the non-functionality requirement to product design trade dress. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001). The question in *TrafFix* was "the effect of an expired patent on a claim of trade dress infringement." *Id.* at 29. As to the effect of a prior patent, the Supreme Court held that:

> A prior patent . . . has vital significance in resolving the trade dress claim. A utility patent is strong evidence that the features therein claimed are functional. If trade dress protection is sought for those features the strong evidence of functionality based on the previous

> patent adds great weight to the statutory presumption that features
> are deemed functional until proved otherwise by the party seeking
> trade dress protection. Where the expired patent claimed the features
> in question, one who seeks to establish trade dress protection must
> carry the heavy burden of showing that the feature is not functional,
> for instance by showing that it is merely an ornamental, incidental,
> or arbitrary aspect of the device.

*Id.* at 29-30.

With respect to distinctiveness, the Supreme Court in *Qualitex* found that "a product's color is unlike 'fanciful,' 'arbitrary,' or 'suggestive' words or designs, which almost *automatically* tell a customer that they refer to a brand." *Qualitex*, 514 U.S.at 162-63 (quoting *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2nd Cir. 1976)). "But, over time, customers may come to treat a particular color on a product or its packaging . . . as signifying a brand. And, if so, that color would have come to identify and distinguish the goods — i.e., 'to indicate' their 'source' — much in the way that descriptive words on a product . . . can come to indicate a product's origin." *Id.* at 163 (quoting Section 45, 15 U.S.C. § 1127).

The Supreme Court's subsequent *Wal-Mart* opinion involved the application of the distinctiveness requirement to product design trade dress. The question in *Wal-Mart* was "under what circumstances a product's design is distinctive, and therefore protectible, in an action for infringement of unregistered trade dress" under Section 43(a). *Wal-Mart*, 529 U.S. at 207. The Supreme Court pointed out its holding in *Qualitex* that no color trademark can ever be inherently distinctive, and found that:

> In the case of product design, as in the case of color, we think
> consumer predisposition to equate the feature with the source does
> not exist. Consumers are aware of the reality that, almost invariably,
> even the most unusual of product designs — such as a cocktail
> shaker shaped like a penguin — is intended not to identify the source,
> but to render the product itself more useful or more appealing.

14

*Id.* at 212-13. The Supreme Court thus held that a product's design is distinctive, and therefore protectable as trade dress under Section 43(a), "only upon a showing of secondary meaning." *Id.* at 216.

### 2. Analysis

Masontops argues that the Court should dismiss Constructive Eating's trade dress infringement claim for five reasons. First, Masontops argues that the trade dress articulation fails for lack of particularity. Second, Masontops argues that Constructive Eating has not plausibly alleged that the alleged trade dress is not functional. Third, Masontops argues that the trade dress articulation is a "laundry list" of functional elements. Fourth, Masontops argues that Constructive Eating has not plausibly alleged that the alleged trade dress has acquired distinctiveness through secondary meaning. Fifth, Masontops argues that Constructive Eating has not plausibly alleged a likelihood of confusion as to the source of Masontops' eating utensils.

With respect to its particularity argument, Masontops argues that the trade dress articulation impermissibly includes hedge language. As examples, Masontops points to the "including but not limited to," "such as," "which can include," and "or other color" language. However, contradictory to its argument, Masontops cites one case where the trade dress articulation was insufficient despite the absence of hedge language, and another case where the trade dress articulation was sufficient despite the presence of hedge language. *See Mike Vaughn*, 15 F. Supp. 3d at 746 ("signature trade dress feature" for various products was insufficient); *Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 415 (6th Cir. 2006) ("exterior appearance and styling of the vehicle design which includes [various features], etc." was sufficient). It is clear that in both cases, the courts were focused on the substance of the trade dress articulations, not the permissibility of hedge language. In fact, in *General Motors*, the Sixth Circuit directly addressed

the "etc." language, finding that it "must be ignored in such a listing as it does not define any further element to be included in the trade dress." *Gen. Motors*, 468 F.3d at 415.

In this case, as in *General Motors*, the "including but not limited to" and "such as" language, which appears in the introductory description of the trade dress articulation, can simply be ignored. *See Gen. Motors*, 468 F.3d at 415. The remaining "which can include" and "or other color" language appears in the body of the trade dress articulation, where it permissibly sets forth examples of the two-tone color scheme and the color schemes of the construction vehicles.

Masontops also argues that the trade dress articulation impermissibly includes generalities that "hide the ball" as to the alleged trade dress. As examples, Masontops points to the "design, style, appearance, visual connection and visual flow" and "overall shape, proportions, widths, heights, size and dimensions" language. Constructive Eating, however, points out that the Complaint includes not only the trade dress articulation, but also images of its eating utensils. Constructive Eating argues that on a Rule 12(b)(6) motion, the trade dress articulation, when combined with the images, does not fail for lack of particularity. Constructive Eating, moreover, cites cases that persuasively support its argument. *See*, *e.g.*, *Dayco Prods., LLC v. Dorman Prods., Inc.*, 2010 WL 3855221, at *4 (E.D. Mich. Sept. 28, 2010) (Murphy, J.) ("The Sixth Circuit, and district courts within it, agree that including photographs of the relevant trade dress in the complaint satisfies, at least during the early stages of the litigation before discovery has commenced, the general requirement that the elements of trade dress be specifically identified and articulated in a list.") (citing, *inter alia*, *Am. Eagle*, 280 F.3d at 635 ("A complaint . . . merely puts the defendant on notice of the plaintiff's claims. . . . *Had the case proceeded further*, Abercrombie would have been expected to list the elements of the designs and the unique combinations it sought to protect . . . .") (emphasis added)).

16

In this case, Constructive Eating has satisfied its duty to articulate the elements of the alleged trade dress. *See Am. Eagle*, 280 F.3d at 634 ("the discrete elements which make up that combination should be separated out and identified in a list"). Moreover, construing the Complaint in the light most favorable to Constructive Eating, the trade dress articulation, when combined with the images, can be read as setting forth [the exact] "design, style, appearance, visual connection and visual flow" and [the exact] "overall shape, proportions, widths, heights, size and dimensions" [seen in Constructive Eating's eating utensils]. *Cf. Dayco*, 2010 WL 3855221, at *4. Accordingly, and with due regard to the thoroughness of the trade dress articulation, the trade dress articulation does not fail for lack of particularity.

In fact, the trade dress articulation, if anything, suffers from over-particularity. As opposed to focusing on one or more core features of its designs, the trade dress articulation reads as an exhaustive list of every feature seen in Constructive Eating's eating utensils.

Accordingly, with respect to Masontops' functionality arguments, the Court inevitably agrees that the trade dress articulation includes seemingly functional elements. For instance, element [1b] is directed, in part, to the placement and location of the construction vehicles. However, Pearson, a prior utility patent, claims a "combined spoon and toy" in which a "portion simulating a truck" is "integrally" interposed between a "handle portion" and a "ladle like portion." Pearson 2:41-50 (claim 1), ECF No. 23-2 at PageID.170. Because Pearson "claimed the features in question," the prior utility patent is "strong evidence" that this element is functional in the field of construction vehicle-themed eating utensils. *TrafFix*, 532 U.S. at 29-30. Similarly, element [1d] is directed to the non-interfering integration of the construction vehicles with the food manipulating portions. However, the Complaint itself suggests that this element is functional in the field of construction vehicle-themed eating utensils. *See* Am. Compl. ¶ 8, ECF No. 4 at

17

PageID.53-54 (explaining that Constructive Eating morphed the construction vehicles into the food-manipulating portions to create the impression that the food-manipulating portions are part of the construction vehicles, making for a more original, life-like and fun user experience for children).

Moreover, elements [1f], [1h], and [1i] are directed to the two-tone color scheme and the use of two different materials. Once again, the Complaint itself suggests that these elements are functional in the field of construction vehicle-themed eating utensils. *See id.* ¶ 9, ECF No. 4 at PageID.54 (explaining that Constructive Eating used the two-tone color schemes to make its eating utensils distinctive and attractive to customers, and used two different materials to provide the appearance of different textures on different portions of its eating utensils). Similarly, element [1b] is directed, in part, to the design and appearance of the construction vehicles, and elements [2a]-[2e] are directed to the overall configurations and color schemes of the construction vehicles. However, Constructive Eating included generally true-to-life renditions of actual construction vehicles, suggesting that these elements are standard and essential, and therefore functional, in the field of construction vehicle-themed eating utensils.

Although Constructive Eating does not dispute, as a factual matter, that the trade dress articulation includes functional elements, it points out that the Complaint includes allegations that the alleged trade dress is non-functional. Constructive Eating argues that on a Rule 12(b)(6) motion, the non-functionality allegations must be accepted as true, and for this reason, the Court cannot decide "contested" issues of functionality. Initially, it bears emphasis that the Court is not making functionality determinations. Instead, the Court is simply determining whether Constructive Eating has plausibly alleged non-functionality. Relevant to the plausibility determination, Section 43(a)(3) creates a statutory presumption of functionality. *TrafFix*, 532 U.S. at 29-30 (noting the

18

"statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection"). In the Complaint, the non-functionality allegations appear, in their entirety, as conclusory introductory and summary descriptions of the trade dress articulation. *See* Am. Compl. ¶¶ 27, 77, ECF No. 4 at PageID.58-59, 69-70 (introducing the alleged trade dress as an "overall combination of . . . non-functional design aspects"); ¶ 78, ECF No. 4 at PageID.70 (summarizing the alleged trade dress as "non-functional, made up of design features that are not essential to the use or purpose of the article" and as "an arbitrary combination of features not necessary for the products to work"). Because the non-functionality allegations are "bare assertions" that "amount to nothing more than a formulaic recitation" of the non-functionality requirement, they are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681.

Constructive Eating also argues that because they are not part of the Complaint, Pearson and actual construction vehicles should not be considered. On this point, the Court disagrees. With respect to Pearson, it is "well-established that a court may take judicial notice of patents or patent applications." *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 930 (Fed. Cir. 2014) (citing *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 n.27 (Fed. Cir. 1993)). With respect to actual construction vehicles, where, as here, the trade dress articulation includes elements directed to the overall configurations and color schemes of the construction vehicles, Constructive Eating does not offer any persuasive reason why the Court should not take judicial notice of the undisputable fact that Constructive Eating included generally true-to-life renditions of actual construction vehicles.

On the other hand, as to what is part of the Complaint, Constructive Eating points out that the Complaint includes images of a competitor's construction vehicle-themed eating utensils. Constructive Eating argues that the contrast between the parties' designs and the competitor's

designs (and Pearson's design, for that matter) supports the non-functionality allegations. It appears that Constructive Eating is asking the Court to consider evidence of alternative non-infringing designs. *See* Pls.' Resp. Br. 13-14, ECF No. 26 at PageID.210-211 ("There are a myriad of ways to integrate a construction-themed vehicle with an eating utensil, and a myriad of designs for the construction-themed vehicle."). However, following the Supreme Court's *TrafFix* opinion, there are two forms of functionality — traditional and aesthetic – and evidence of alternative non-infringing designs has exclusive applicability to aesthetic functionality. *See*, *e.g.*, *Am. Eagle*, 280 F.3d at 641-42 (explaining the different tests and evidence for the "two forms of functionality" identified in *TrafFix*) (citing *TrafFix*, 532 U.S. at 32-33). At least at this stage of the case, the parties' functionality and non-functionality arguments are framed in terms of traditional functionality. Accordingly, the Court declines to consider evidence of alternative non-infringing designs. *Id.*; *see also Antioch Co. v. Western Trimming Co.*, 347 F.3d 150, 157 (6th Cir. 2003) (affirming the district court's rejection of such evidence in a traditional functionality case).

Constructive Eating also asks the Court to consider the D'440 and D'441 Patents, arguing that they are presumptive evidence of non-functionality. *See Fuji Kogyo Co. v. Pac. Bay Int'l, Inc.*, 461 F.3d 675, 683 (6th Cir. 2006) ("A design patent, counter to a utility patent, is presumptive evidence of non-functionality, evidence that may support a similar trademark claim."). With respect to the D'440 and D'441 Patents, it bears emphasis, first, that the patented designs cover a totality of features, and second, that the above elements are some, but not all, of the elements of the trade dress articulation. With respect to the above elements individually, because they do not correspond to the totality of features covered by the patented designs, the D'440 and D'441 Patents are not plausibly presumptive evidence of non-functionality. Moreover, in *Fuji Kogyo*, the Sixth Circuit pointed out that in that case the design patents at issue did "little to help resolve the merits"

because competing evidence, including a utility patent, suggested functionality. *Id.* at 684. Likewise, in this case, Pearson, the Complaint, and actual construction vehicles suggest that the above elements are functional. Accordingly, Constructive Eating has not plausibly alleged non-functionality of the above elements individually.

However, other elements of the trade dress articulation more generally represent the alleged trade dress as a whole. For instance, element [1a] is directed to the design, style, appearance, visual connection and visual flow of the handles to the construction vehicles to the food manipulating portions, element [1c] is directed to the shape, angle, and extension of the handles from the construction vehicles, and element [1e] is directed to the overall shapes, proportions, widths, heights, sizes, and dimensions of the eating utensils. With respect to these elements in combination, because they more closely correspond to the totality of features covered by the patented designs, the D'440 and D'441 Patents are plausibly presumptive evidence of non-functionality. Accordingly, Constructive Eating has plausibly alleged non-functionality of the alleged trade dress as a whole.

With respect to its secondary meaning and likelihood of confusion arguments, Masontops identifies what it contends are standard, essential, and otherwise functional elements in the field of construction vehicle-themed eating utensils, and what it contends are minutiae. With respect to the functional elements, Masontops argues that Constructive Eating cannot, as a matter of law, establish secondary meaning and likelihood of confusion. With respect to the minutiae, Masontops argues that Constructive Eating has not plausibly alleged secondary meaning and likelihood of confusion.

Although Constructive Eating does not dispute, as a factual matter, that the trade dress articulation includes functional elements and minutiae, it points out that the Complaint includes

factual allegations that support reasonable inferences of secondary meaning and likelihood of confusion. For instance, with respect to secondary meaning, the Sixth Circuit considers seven factors: "(1) direct consumer testimony, (2) consumer surveys, (3) exclusivity, length, and manner of use, (4) amount and manner of advertising, (5) amount of sales and number of customers, (6) established place in the market, and (7) proof of intentional copying." *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 528 (6th Cir. 2013). Constructive Eating points out that, in correspondence with these factors, the Complaint details examples of secondary meaning. *See* Am. Compl. ¶¶ 10, 17-20, ECF No. 4 at PageID.54-56 (detailing that after investing substantial time and resources developing, manufacturing, marketing, promoting and building a distribution network for its eating utensils, Constructive Eating achieved significant commercial success, including generating millions of dollars in sales on nearly a million eating utensils); ¶¶ 21-25, ECF No. 4 at PageID.56-57 (detailing that Constructive Eating achieved numerous awards, national recognition, national publicity, favorable customer reviews, and large social media followings). Moreover, with respect to likelihood of confusion, Constructive Eating points out that the Complaint details not only the similarities between the parties' designs, but also examples of actual confusion as to the source of Masontops' eating utensils. *See id.* ¶¶ 34-37, 39, 41, ECF No. 4 at PageID.61-62 (detailing that at a trade show where both parties displayed their eating utensils, individuals approached Constructive Eating at its booth and, in reference to Masontops' booth, asked if Constructive Eating had another booth); ¶ 42, ECF No. 4 at PageID.62 (detailing that Constructive Eating received a communication from a store owner who, after receiving Masontops' eating utensils from a distributor, initially thought that they originated from Constructive Eating).

To be clear, the Court appreciates the logic of Masontops' secondary meaning and likelihood of confusion arguments. *See*, *e.g.*, *TrafFix*, 532 U.S. at 34-35 ("The Lanham Act . . .

does not protect trade dress in a functional design simply because an investment has been made to encourage the public to associate a particular functional feature with a single manufacturer or seller."). However, as discussed above, Constructive Eating has plausibly alleged non-functionality of the alleged trade dress as a whole. While it remains to be seen whether the issues involved in functionality determinations will foreclose findings of secondary meaning and likelihood of confusion, these issues are more properly addressed on a full record at later stages of this case. At this stage of the case, Constructive Eating has plausibly alleged that the alleged trade dress has acquired distinctiveness through secondary meaning, and that there a likelihood of confusion as to the source of Masontops' eating utensils.

Having found that the trade dress articulation does not fail for lack of particularity, and that Constructive Eating has plausibly alleged non-functionality of the alleged trade dress as a whole, that the alleged trade dress has acquired distinctiveness through secondary meaning, and that there a likelihood of confusion as to the source of Masontops' eating utensils, the Court denies the Motion as to Constructive Eating's claim of trade dress infringement and unfair competition under the Lanham Act.

### B. Design Patent Infringement

Constructive Eating asserts claims of design patent infringement under the Patent Act, 35 U.S.C. § 1 et seq., alleging that Masontops infringes the D'440 Patent in connection with its front loader utensil and infringes the D'441 Patent in connection with its bulldozer utensil. Am. Compl. ¶¶ 44-52 (D'440 Patent (Count I)), 53-61 (D'441 Patent (Count II)), ECF No. 4. at PageID.62-66.

For the reasons set forth below, the Court will deny the Motion as to Constructive Eating's claims of design patent infringement.

### 1. Legal Standards

A design patent covers the "new, original, and ornamental design for an article of manufacture." 35 U.S.C. § 171(a). A design patent is claimed according to its drawing figures. *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1302-03 (Fed. Cir. 2010). "No description of the design in the specification beyond a brief description of the drawing is generally necessary, since as a rule the illustration in the drawing views is its own best description." Manual of Patent Examining Procedure § 1503.01.

For a design patent, the infringement determination involves two steps: (1) the court construes the claims; and (2) the factfinder compares the properly construed claims to the accused product. *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341 (Fed. Cir. 2020). However, a design patent "only protects the novel, ornamental features of the patented design." *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). Accordingly, it can be helpful when construing the claims to "distinguish[] between those features of the claimed design that are ornamental and those that are purely functional." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 680 (Fed. Cir. 2008) (*en banc*).

To compare the patented design to the accused product, the factfinder applies the "ordinary observer" test. *Gorham Co. v. White*, 81 U.S. 511, 528 (1871). The ordinary observer test asks whether an ordinary observer, familiar with prior art designs, would be deceived into believing that the accused product is the same as the patented design. *See Egyptian Goddess*, 543 F.3d at 681. "The ordinary observer test applies to the patented design in its entirety, as it is claimed." *Crocs*, 598 F.3d at 1303. "Minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Id.* (quotation, alteration and citation omitted).

**2. Analysis**

24

Masontops argues that the Court should dismiss Constructive Eating's design patent infringement claims for two reasons. First, Masontops argues that the infringement allegations fail for lack of side-by-side comparisons between all views of the patented designs and images of Masontops' eating utensils. Second, Masontops argues that once the functional features of the patented designs are disregarded, Constructive Eating has not plausibly alleged infringement.

Masontops' all views argument is unfounded. The Complaint includes side-by-side comparisons between the front-page figures of the D'440 and D'441 Patents and Masontops' eating utensils. *See* Am. Compl. ¶¶ 46, 55, ECF No. 4. at PageID.63, 65. As to why these side-by-side comparisons are insufficient, Masontops places undue reliance on cases involving infringement determinations. *See*, *e.g.*, *Crocs*, 598 F.3d at 1304 ("The proper comparison requires a side-by-side view of the drawings of the [design patent] and the accused products."). At the pleading stage, the Federal Circuit outlines five pleading requirements that provide "enough detail to allow the defendants to answer": "to (i) allege ownership of the patent, (ii) name each defendant, (iii) cite the patent that is allegedly infringed, (iv) state the means by which the defendant allegedly infringes, and (v) point to the sections of the patent law invoked." *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013). In this case, the infringement allegations satisfy the relevant pleading requirements.

With respect to its non-infringement argument, Masontops identifies what it contends are the relevant functional features of the patented designs. In addition to the concept of construction vehicle-themed eating utensils, Masontops identifies the entire "configuration and integration" of the handles, the construction vehicles and the food manipulation portions. Turning to what it contends are the relevant differences between the patented designs and Masontops' eating utensils, Masontops particularly emphasizes the D'441 Patent and Masontops' bulldozer utensil.

Masontops points out that the D'441 Patent covers Constructive Eating's design for the bulldozer utensil, in which the bulldozer's blade morphs into a pusher, while in Masontops' bulldozer utensil, the bulldozer's blade morphs into a fork. Masontops argues that as a matter of law, a patented design involving a pusher cannot be infringed by an accused product involving a fork. To illustrate further differences, Masontops attaches two exhibits, one for the D'440 Patent and one for the D'441 Patent. *See* Def.'s Mot. Br. Ex. B, ECF No. 23-3 (D'441 Patent); Ex. C, ECF No. 23-4 (D'440 Patent). In the exhibits, Masontops includes side-by-side comparisons between all figures of the D'440 and D'441 Patents and Masontops' eating utensils. In connection with the side-by-side comparisons, Masontops sets forth descriptions of what it contends the D'440 and D'441 Patents claim, and points out how Masontops' eating utensils do not match the descriptions. Referring to the exhibits, Masontops argues that after disregarding the functional features and considering the differences between the patented designs and Masontops' eating utensils, an ordinary observer would not find infringement.

Constructive Eating disputes Masontops' non-infringement argument, arguing that because the patented designs and Masontops' eating utensils are "very similar," an ordinary observer would find infringement. With respect to the D'441 Patent and Masontops' bulldozer utensil, Constructive Eating argues that in the patented design, the pusher should be disregarded as a functional feature. In any event, Constructive Eating argues that where, as here, they are both directed to construction vehicle-themed eating utensils, a patented design involving a pusher can be infringed by an accused product involving a fork.

The Court agrees with Constructive Eating's main argument, namely, that an infringement determination, at least in this case, is improper on a Rule 12(b)(6) motion. Masontops asks the Court to consider the exhibits attached to the Motion, which are not part of the Complaint. More

importantly, as revealed by the parties' non-infringement and infringement arguments, the infringement determination in this case will be fairly involved, requiring identifying functional features, claim constructions, identifying differences between the patented designs and Masontops' eating utensils, and applying the ordinary observer test, all in the face of disputes between the parties. And, compounding the issues involved in the infringement determination, there is, simply put, a lot going on in the patented designs. In particular, the patented designs involve not only features of the combination of the construction vehicles with the handles and the food-manipulating portions, but also features of the handles, the construction vehicles and the food-manipulating portions individually.

While it remains to be seen whether the issues involved in the infringement determination will foreclose a finding of infringement, these issues are more properly addressed on a full record at later stages of this case. At this stage of the case, the Court simply recognizes that the patented designs and Masontops' eating utensils are both directed to construction vehicle-themed eating utensils, and are plainly similar from a high-level design standpoint. Accordingly, while it is a closer call with respect to the D'441 Patent and Masontops' bulldozer utensil, Constructive Eating has plausibly alleged infringement.

Having found that the infringement allegations satisfy the relevant pleading requirements and that Constructive Eating has plausibly alleged infringement, the Court denies the Motion as to Constructive Eating's claims of design patent infringement.

### C. Copyright Infringement

Constructive Eating asserts claims of copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq., alleging that Masontops infringes the '404 Copyright in connection with its

front loader utensil and infringes the '223 Copyright in connection with its bulldozer utensil. Am.

Compl. ¶¶ 62-73 (Count III), ECF No. 4. at PageID.66-68.

For the reasons set forth below, the Court will deny the Motion as to Constructive Eating's

claims of copyright infringement.

### 1. Legal Standards

Under the Copyright Act, copyright protection may be afforded to "works of authorship

fixed in any tangible medium of expression." 17 U.S.C. § 102(a). "In no case," however, "does

copyright protection for an original work of authorship extend to any idea, procedure, process,

system, method of operation, concept, principle, or discovery." *Id.* § 102(b). Among other

categories, works of authorship include "pictorial, graphic, and sculptural works," *id.* § 102(a)(5),

defined to include "two-dimensional and three-dimensional works of fine, graphic, and applied

art," *id.* § 101.

Constructive Eating's designs are registered as sculptural works. *See* '223 Copyright, ECF

No. 4-3 at PageID.91; '404 Copyright, ECF No. 4-4 at PageID.94. Under this category, the

Copyright Act provides separate treatment for the design of a "useful article" — i.e., "an article

having an intrinsic utilitarian function that is not merely to portray the appearance of the article or

to convey information." 17 U.S.C. § 101. In particular, the design "shall be considered a pictorial,

graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial,

graphic, or sculptural features that can be identified separately from, and are capable of existing

independently of, the utilitarian aspects of the article." *Id.* Interpreting the provisions concerning

useful articles, the Supreme Court holds that:

> . . . a feature incorporated into the design of a useful article is eligible
> for copyright protection only if the feature (1) can be perceived as a
> two- or three-dimensional work of art separate from the useful
> article and (2) would qualify as a protectable pictorial, graphic, or
> sculptural work — either on its own or fixed in some other tangible

medium of expression — if it were imagined separately from the
useful article into which it is incorporated.

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S.Ct. 1002, 1007 (2017).

To establish infringement, two elements must be proven: (1) ownership of a valid
copyright; and (2) copying of constituent elements of the work that are original to the author. *Feist
Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Relevant to the first element, a
registered copyright is entitled to a presumption of validity. 17 U.S.C. § 410(c).

### 2. Analysis

Masontops argues that the Court should dismiss Constructive Eating's copyright
infringement claims for two reasons. First, Masontops argues that the infringement allegations fail
to allege separable sculptural works eligible for copyright protection. Second, Masontops argues
that once the standard, essential, and unoriginal features of the copyrighted designs are disregarded,
Constructive Eating has not plausibly alleged infringement.

Initially, it is unclear where Masontops is going with its separable sculptural works
argument. To the extent Masontops argues that Constructive Eating's designs are ineligible for
copyright protection, its argument is unfounded at the pleadings stage because the '404 and '223
Copyrights are entitled to a presumption of validity. To the extent Masontops argues that
identifying separable sculptural works is a pleading requirement, it has not offered any authority
for its argument. Absent contrary authority, the Court presumes that the infringement allegations
are adequately plead.

With respect to its non-infringement argument, Masontops identifies what it contends are
the relevant standard, essential, and unoriginal features of the copyrighted designs. In addition to
the concept of construction vehicle-themed eating utensils, Masontops identifies the overall
configurations and color schemes of the construction vehicles. Turning to what it contends are the

relevant differences between the copyrighted designs and Masontops' eating utensils, Masontops attaches two exhibits, one for the '404 Copyright and one for the '223 Copyright. *See* Def.'s Mot. Br. Ex. D, ECF No. 23-5 ('223 Copyright); Ex. E, ECF No. 23-6 ('404 Copyright). In the exhibits, Masontops identifies what it contends are the separable sculptural works of the '404 and '223 Copyrights, and includes side-by-side comparisons between the separable sculptural works and Masontops' eating utensils. In connection with the side-by-side comparisons, Masontops sets forth descriptions of the separable sculptural works, and points out how Masontops' eating utensils do not match the descriptions. Referring to the exhibits, Masontops argues that after disregarding the standard, essential, and unoriginal features, the copyrighted designs and Masontops' eating utensils are "fundamentally different."

Constructive Eating disputes Masontops' non-infringement argument, arguing that the exhibits highlight the "substantial similarity" between the copyrighted designs and Masontops' eating utensils.

The Court agrees with Constructive Eating's secondary argument, namely, that an infringement determination, at least in this case, is improper on a Rule 12(b)(6) motion. Masontops asks the Court to consider the exhibits attached to the Motion, which are not part of the Complaint. More importantly, as revealed by the parties' non-infringement and infringement arguments, the eligibility and infringement determinations in this case will require identifying standard, essential, and unoriginal features, identifying separable sculptural works, and considering the similarity of the copyrighted designs and Masontops' eating utensils, all in the face of disputes between the parties.

While it remains to be seen whether the issues involved in the eligibility and infringement determinations will foreclose findings of eligibility and infringement, these are issues more

properly addressed on a full record at later stages of this case. At this stage of the case, the Court simply recognizes that the copyrighted designs and Masontops' eating utensils are plainly similar from a high-level design standpoint. Accordingly, Constructive Eating has plausibly alleged infringement.

Having found that the infringement allegations are presumably adequately plead and that Constructive Eating has plausibly alleged infringement, the Court denies the Motion as to Constructive Eating's claims of copyright infringement.

### D. State Law Claims

Constructive Eating asserts a claim of common law unfair competition, alleging that Masontops unfairly competes with Constructive Eating by, *inter alia*, misappropriating its "proprietary" designs, and causing confusion as to the source of Masontops' eating utensils. Am. Compl. ¶¶ 88-100 (Count V), ECF No. 4. at PageID.71-73. Constructive Eating also asserts a claim of violation of the MCPA, MICH. COMP. LAWS § 445.901 et seq., alleging that Masontops has engaged in unfair and deceptive activities by, *inter alia*, causing confusion as to the source of Masontops' eating utensils. *Id.* ¶¶ 101-105 (Count VI), ECF No. 4. at PageID.73-74.

Masontops argues that the Court should dismiss Constructive Eating's state law claims for three reasons. First, Masontops argues that Constructive Eating's state law claims are preempted by the Copyright Act. Second, and third, with respect to the MCPA, Masontops argues that Constructive Eating has not alleged fraud with particularity under Rule 9(b) and that Constructive Eating does not have standing under the statute because it is not a consumer.

None of Masontops' arguments are persuasive. Masontops' preemption argument amounts to a conclusory statement that Section 301(a) of the Copyright Act applies to Constructive Eating's state law claims. In Section 301(a), the Copyright Act expressly preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . .

and come within the subject matter of copyright." 17 U.S.C. § 301(a). However, Constructive Eating points out that its state law claims are not preempted by the Copyright Act because they include "extra elements" such as unfair competition, confusion and deception. *See*, *e.g.*, *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 456 (6th Cir. 2001) (explaining that there is no equivalency for a state law that has an "extra element" that "changes the nature of the action so that it is qualitatively different from a copyright infringement claim"). *Cf. Excel Homes, Inc. v. Locricchio*, 7 F. Supp. 3d 706, 713 (E.D. Mich. 2014) (Cox, J.) (dismissing common law unfair competition claim where the plaintiff's complaint "makes clear that its injury derives solely from Defendants' alleged copying of Plaintiff's copyrighted drawings").

As to the MCPA, with respect to its particularly argument, Masontops does not point out any fraud allegations in the Complaint. Moreover, Masontops' standing argument amounts to a conclusory statement that the statute does not afford standing to non-consumers. However, Constructive Eating points out that the statute allows an action by a "person," defined as "an individual, corporation, limited liability company, trust, partnership, incorporated or unincorporated association, or other legal entity." *See* MICH. COMP. LAWS § 445.902(d); *see also Action Auto Glass v. Auto Glass Specialists*, 134 F. Supp. 2d 897, 903 (W.D. Mich. 2001) (citing the "person" definition and concluding that "business competitors have standing under the MCPA because it must presume that the legislature intended the meaning expressed in the statute"). *Cf. Zine v. Chrysler Corp.*, 236 Mich. App. 261, 275 (1999) (explaining, in holding that the statute does not apply to an item "purchased primarily for business or commercial rather than personal purposes," that the relevant focus is "the primary use to which the consumer puts the product").

Having found that Masontops has not offered any persuasive reason why the Court should dismiss the state law claims, the Court denies the Motion as to Constructive Eating's claims of common law unfair competition and violation of the MCPA.

## V. CONCLUSION

For the reasons set forth above, having found that Constructive Eating has satisfied the relevant pleading requirements and plausibly alleged the elements of its claims, the Court denies the Motion.

Dated: February 23, 2021

s/Sean F. Cox
Sean F. Cox
U. S. District Judge